**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Kevin P. Fitzgerald,<br><br>    Plaintiff,<br><br>v.<br><br>Freightliner of Arizona LLC,<br><br>    Defendant. | No. CV-17-04601-PHX-JJT<br><br>**ORDER** |

At issue is Defendant Freightliner of Arizona LLC's Motion for Summary Judgment (Doc. 45, MSJ), to which Plaintiff Kevin P. Fitzgerald filed a Response (Doc. 62, Resp.) and Defendant filed a Reply (Doc. 64, Reply). Also at issue is Plaintiff's Motion for Judicial Notice (Doc. 54), to which Defendant filed a Response (Doc. 58) and Plaintiff filed a Reply (Doc. 61). The Court finds these matters appropriate for decision without oral argument.

**I.    BACKGROUND**

In 2010, Plaintiff began working for Defendant as a Heavy Truck Part Salesman. (Doc. 46, Defendant's Statement of Facts ("DSOF") ¶ 1; Doc. 1, Compl. ¶ 5.) Plaintiff later became a back counter partsman, and in this role, Plaintiff's job duties included pulling parts to fulfill request orders. (DSOF ¶¶ 2, 10.) Plaintiff worked under the supervision of Jeffrey Hottel ("Hottel"), who generally regarded Plaintiff as a "satisfactory employee." (DSOF ¶ 3.)

While employed by Defendant, Plaintiff made Defendant aware that he had

diabetes, back issues, and lung issues. (DSOF ¶ 6.) To accommodate Plaintiff's diabetes, Defendant allowed Plaintiff to test his blood sugar as needed and take the earliest possible lunch for a partsman. (DSOF ¶ 8.) There were instances, however, when the volume of work orders prevented Plaintiff from taking lunch at the earliest time. (DSOF Ex. 1 at 8; Doc. 63, Plaintiff's Controverting Statement of Facts ("PSOF") ¶ 8.)[1] Defendant also provided Plaintiff with salads at work-related events to accommodate his diabetes. (DSOF ¶¶ 41–42.) To accommodate Plaintiff's back issues, Defendant directed warehouse staff to pull parts for Plaintiff that exceeded Plaintiff's lifting restriction. (DSOF ¶ 9.) Warehouse staff, however, were not always available to assist Plaintiff because of their own work obligations. (DSOF ¶ 47.) As an accommodation for his lung issues, Plaintiff requested that he be allowed to park in a designated disabled parking space. Although Plaintiff possessed a disabled parking placard, Defendant required him to park in general employee parking. (DSOF ¶¶ 48–49.)

Throughout his employment, Plaintiff complained to Hottel about inappropriate comments that Defendant's employees, including Hottel, made to him. (DSOF ¶¶ 32, 39.) Plaintiff alleges that Travis Mobley ("Mobley") brought breads, cookies, and candies to the workplace, and made fun of Plaintiff because he could not eat the foods because of his diabetes. (DSOF ¶ 34.) Another employee made remarks to Plaintiff that he would "get the phone since [Plaintiff's] diabetic back can't do it" and referred to Plaintiff as "old man." (DSOF Ex. 1 at 19.) A third employee also made comments to Plaintiff about his age. (DSOF Ex. 1 at 19.) All of these comments were made on a weekly basis. (DSOF ¶ 37.) Plaintiff estimates that on a monthly basis, Hottel referred to Plaintiff as a "gimp." (DSOF

---

[1] Defendant, in its Reply, requests leave to file a substantive response to Plaintiff's Controverting Statement of Facts. (Reply at 2.) The Court notes that Plaintiff's Controverting Statements of Facts includes facts that are immaterial to the Court's analysis. *See* LRCiv 56.1(b). In resolving Defendant's Motion for Summary Judgment, the Court did not rely on any of these facts. Accordingly, the Court denies Defendant's request.

In addition, Plaintiff's Amended Response to Statement of Facts in Support of Defendant's Motion for Summary Judgment uses inconsistent systems for numbering exhibits. The Court therefore cites to Plaintiff's exhibits as they are numbered and listed in the docket. For consistency, the Court also cites to the exhibits in Defendant's Statement of Facts as they are numbered in the docket.

¶¶ 36–37.) Plaintiff testified that these comments "kind of" impacted his ability to do his job and "anger[ed] [him] a little." (DSOF ¶ 38.)

On December 7, 2016, an altercation between Plaintiff and Mobley occurred. (DSOF ¶¶ 11–14.) Plaintiff received a request order for parts but did not fulfill the request because a service manager gave him permission to take his lunch break. (DSOF ¶ 11; PSOF ¶ 107.) Mobley, acting as the lead of the parts department, confronted Plaintiff about not pulling the requested part. (PSOF Ex. 1 at 94–95; PSOF ¶ 110.) Plaintiff then raised his voice and cursed at Mobley in front of other employees.[2] (DSOF Ex. 1 at 15.) Soon after, Plaintiff texted Hottel, who was not working on that day. (DSOF ¶¶ 15–16.) The texts explained that Plaintiff was late for his lunch and not feeling well because his blood sugar was low. (DSOF Ex. 4.) The texts further stated that Plaintiff lost his temper, and that Hottel may want him to resign. (DSOF Ex. 4.)

Hottel investigated the incident. (DSOF ¶ 16.) Hottel spoke with Mobley and the employees that witnessed the altercation, but Hottel did not further discuss the incident with Plaintiff. (DSOF ¶ 16; PSOF ¶ 126.) Hottel then relayed the information to the regional manager, and the regional manager instructed Hottel to terminate Plaintiff's employment. (PSOF Ex. 1 at 108–09.) On December 13, 2016, Defendant terminated Plaintiff's employment. (DSOF ¶ 20.)

Plaintiff later applied for disability benefits from the Social Security Disability Insurance ("SSDI") program. (DSOF ¶ 25.) The Social Security Administration ("SSA") determined Plaintiff became disabled on December 7, 2016 under SSA guidelines and awarded him SSDI benefits. (DSOF ¶ 26.)

On January 11, 2017, Plaintiff filed a charge of disability discrimination and retaliation with the Civil Rights Division of the Arizona Attorney General's Office ("ACRD") and the Equal Employment Opportunity Commission ("EEOC"). (DSOF ¶ 29.)

---

[2] Plaintiff, in his Response, argues that "damn" is not a "curse" word. (Resp. at 11.) In his deposition, however, Plaintiff agreed that he "cursed" at Mobley. Thus, the Court characterizes the language used by Plaintiff as cursing without deciding whether "damn" constitutes cursing. (DSOF Ex. 1 at 15.)

- 3 -

The ACRD issued notice of Plaintiff's right to sue on September 15, 2017. (PSOF Ex. 3 at 34.) On December 13, 2017, Plaintiff filed a Complaint alleging the following: (Count I-A) discriminatory discharge in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12112 *et seq.*; (Count I-B) failure to provide reasonable accommodations in violation of the ADA; (Count I-C) hostile work environment in violation of the ADA; (Count II) retaliation in violation of the ADA; and (Count III) disability discrimination and retaliation in violation of the Arizona Civil Rights Act (ACRA), A.R.S. §§ 14-1461 *et seq.*[3]

Defendant now moves for summary judgment on all claims against it. In addition to opposing summary judgment, Plaintiff also moves the Court to take judicial notice that "[s]ymptoms of low blood sugar (hypoglycemia) tend to come on quickly and can include a person being irritable, argumentative or combative, changed behavior or personality (such as anger), and feeling weak." (Doc. 54 at 1.)

## II.    LEGAL STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate when: (1) the movant shows that there is no genuine dispute as to any material fact; and (2) after viewing the evidence most favorably to the non-moving party, the movant is entitled to prevail as a matter of law. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Eisenberg v. Ins. Co. of N. Am.*, 815 F.2d 1285, 1288–89 (9th Cir. 1987). Under this standard, "[o]nly disputes over facts that might affect the outcome of the suit under governing [substantive] law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "genuine issue" of material fact arises only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In considering a motion for summary judgment, the Court must regard as true the non-moving party's evidence, if it is supported by affidavits or other evidentiary material.

---

[3] The Complaint characterizes the discriminatory discharge, reasonable accommodation, and hostile work environment claims under the ADA (collectively, the "Discrimination Claims") as "Count I." For purposes of clarity, the Court, in this Order, uses a more specific nomenclature to address Plaintiff's individual claims under Count I.

- 4 -

*Celotex*, 477 U.S. at 324; *Eisenberg*, 815 F.2d at 1289. However, the non-moving party may not merely rest on its pleadings; it must produce some significant probative evidence tending to contradict the moving party's allegations, thereby creating a material question of fact. *Anderson*, 477 U.S. at 256–57 (holding that the plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment); *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968).

"A summary judgment motion cannot be defeated by relying solely on conclusory allegations unsupported by factual data." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). "Summary judgment must be entered 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *United States v. Carter,* 906 F.2d 1375, 1376 (9th Cir. 1990) (quoting *Celotex*, 477 U.S. at 322).

### III. ANALYSIS

Defendant moves for summary judgment on each of Plaintiff's claims. (MSJ at 1.) The Court will first address Plaintiff's Discrimination Claims under the ADA. In doing so, the Court will also resolve Plaintiff's Motion for Judicial Notice. The Court will then address Plaintiff's retaliation claim under the ADA, followed by Plaintiff's ACRA claims.

**A.     Count I: Discrimination Claims**

**a.     Count I-A: Discriminatory Discharge**

Plaintiff alleges that Defendant unlawfully discriminated against him by firing him because of his disability. (Compl. ¶ 56.) Defendant argues that (1) Plaintiff failed to prove a *prima facie* case of discrimination and (2) Defendant fired Plaintiff for a legitimate, non-discriminatory reason. (MSJ at 8–10.)

**i.     Plaintiff's *Prima Facie* Case**

The ADA prohibits an employer from discriminating "against a qualified individual on the basis of a disability." 42 U.S.C. § 12112(a). Claims brought under the ADA are "subject to the burden-shifting framework" laid out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973). *See Curley v. City of N. Las Vegas*, 772 F.3d 629, 632 (9th

Cir. 2014). Under the *McDonnell Douglas* framework, a plaintiff bears "the initial burden of establishing a *prima facie* case of discrimination." *Id.* To establish a *prima facie* case under the ADA, a plaintiff must show that: "(1) he is disabled within the meaning of the ADA; (2) he is a qualified individual able to perform the essential functions of the job with reasonable accommodation; and (3) he suffered an adverse employment action because of his disability." *Allen v. Pac. Bell*, 348 F.3d 1113, 1114 (9th Cir. 2003).

Defendant disputes only one of the *prima facie* elements of disability discrimination under the ADA: that Plaintiff is a qualified individual able to perform the essential functions of the job with reasonable accommodation. (MSJ at 9.) Defendant argues that Plaintiff fails to explain how he can be eligible for SSDI benefits—an award premised on his inability to work—when, in this lawsuit, he argues he could perform the essential functions of a partsman. (MSJ at 9.) Plaintiff counters that he was able to perform the essential functions of the job with reasonable accommodations, and further argues that there is sufficient evidence as to why he could qualify for SSDI benefits and still be protected by the ADA. (Resp. at 6–7.)

SSDI claims and ADA claims do not inherently conflict. *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 802 (1999). Under the ADA, for example, a "qualified individual" includes a disabled person who can perform the essential functions of a job *with reasonable accommodation*. *Id.* at 803. The SSA, however, does *not* consider the possibility of reasonable accommodations when determining SSDI eligibility. *Id.* Accordingly, there are situations in which a SSDI claim and an ADA claim can exist harmoniously. *Id.*

An ADA plaintiff, however, cannot turn a blind eye to the SSDI contention that he was too disabled to work. *Id.* at 798. To survive a defendant's motion for summary judgment, a plaintiff who is alleging ADA claims but who also qualifies for SSDI benefits must provide an explanation that is sufficient for a reasonable juror to conclude that he could perform the essential function of a job, with or without reasonable accommodation, despite a disability determination by the SSA. *Smith v. Clark Cty. Sch. Dist.*, 727 F.3d 950,

959 (9th Cir. 2013). This "sufficient explanation standard is not an exceedingly demanding one." *Id.* at 958. Indeed, plaintiffs bringing claims under the ADA have "wide latitude to overcome apparent conflicts between their disability applications and their ADA claims." *Id.*

Under this standard, the Court concludes that Plaintiff provided an explanation sufficient for a reasonable juror to conclude that Plaintiff could perform the essential functions of a back counter partsman, with or without reasonable accommodation. Plaintiff explains that SSDI does not consider reasonable accommodations required under the ADA, and that he could perform the essential functions of the back counter position with the reasonable accommodations generally provided to him prior to his termination. (Resp. at 6). Defendant argues that Plaintiff's explanation is insufficient because Plaintiff repeatedly applied for SSDI benefits. (Reply at 4.) Past denial of SSDI benefits, however, suggests that Plaintiff *was* able to work and, therefore, is consistent with Plaintiff's ADA claims. The fact that Plaintiff met production quotas and Hottel described his performance as "on par with the job" reinforce the Court's determination. (PSOF ¶ 79, 81; PSOF Ex. 1 at 71.)

Defendant also argues that Plaintiff failed to satisfy the sufficient explanation standard based on Plaintiff's deposition testimony. In his deposition, Plaintiff testified that he would need "another person there setting by me, running, going, getting the parts, doing all the heavy lifting for me . . . pretty much another me" to perform the essential functions of a back counter partsman. (Reply at 4.) Defendant argues that hiring a second person to do the work of Plaintiff is not a *reasonable* accommodation, and thus Plaintiff is not a qualified individual under the ADA. (MSJ at 9.) Plaintiff, however, contends that Defendant's argument is "premised upon a gross characterization" of Plaintiff's deposition testimony, and that Plaintiff was simply being "facetious." (Resp. at 6.)

The Court is loath to reward a party who testifies under oath one way, only to impugn the seriousness of this sworn testimony when its potential detriment is realized. Nonetheless, given the wide latitude afforded to ADA plaintiffs to overcome SSDI and ADA discrepancies and that Plaintiff, when considering the reality of his circumstances

and the objective evidence as a whole, performed the duties of his job with reasonable accommodations until his termination, the Court finds that Plaintiff provided an explanation sufficient for a reasonable juror to conclude that Plaintiff could perform the essential functions of his job, with or without reasonable accommodation. Thus, Defendant is not entitled to summary judgment as to Plaintiff's *prima facie* case of discriminatory discharge under the ADA. *See Smith*, 727 F.3d at 959.

### ii. Non-Discriminatory Reason for Discharge

If an ADA plaintiff establishes a *prima facie* case of discrimination, "the burden shifts to the defendant to provide a legitimate, non-discriminatory reason for its employment action." *Raytheon Co. v. Hernandez*, 540 U.S. 44, 50 (2003). A defendant is *not* required to persuade the Court that an employment action was "actually motivated by the proffered reasons." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981). Rather, a defendant need only provide evidence that raises a genuine issue of fact as to whether it discriminated against the plaintiff. *Burdine*, 450 U.S. at 254–55. Once an employer offers a legitimate, nondiscriminatory reason for its employment action, the burden shifts back to the plaintiff to demonstrate the employer's articulated reason is a pretext for disability discrimination. *Snead v. Metro. Prop. & Cas. Ins. Co.*, 237 F.3d 1080, 1093 (9th Cir. 2001).

Defendant contends that it terminated Plaintiff's employment because of Plaintiff's outburst at Mobley on December 7, 2016. (MSJ at 10.) Plaintiff argues this reason is pretextual because Defendant "failed to fire others who yelled and cursed at a manager." (Resp. at 14.) Plaintiff explains that on a prior occasion, Mobley used profane language in a verbal argument with a service manager employed by Defendant, but Defendant did not fire him. (Resp. at 10.) Plaintiff's evidence creates a genuine issue of material fact as to whether Defendant's proffered reason for terminating his employment was legitimate or pretextual. *See Vasquez v. Cty. of Los Angeles*, 349 F.3d 634, 641 (9th Cir. 2003) ("A showing that [an employer] treated similarly situated employees outside [a] protected class more favorably would be probative of pretext."). Accordingly, Defendant is not entitled to

summary judgment on Plaintiff's discriminatory discharge claim (Count I-A).

### iii. Plaintiff's Motion for Judicial Notice

Plaintiff also argues that Defendant's decision to fire him is disability discrimination because conduct resulting from a disability is generally considered to be part of the disability. (Resp. at 7.) To support this argument, Plaintiff relies on texts he sent to Hottel after his altercation with Mobley. In the texts, Plaintiff stated he was twenty minutes late for lunch and not feeling well because his blood sugar was low. (DSOF Ex. 4.)

Plaintiff moves the Court to take judicial notice that "[s]ymptoms of low blood sugar (hypoglycemia) tend to come on quickly and can include a person being irritable, argumentative or combative, changed behavior or personality (such as anger), and feeling weak" based on the National Institute of Diabetes and Digestive and Kidney Diseases website and the University of Michigan Medicine website (Doc 54 at 1.) The Court may take judicial notice of facts "not subject to reasonable dispute" because they are either: "(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201. The Ninth Circuit recognizes that "[w]ell-known medical facts are the types of matters of which judicial notice may be taken." *See Barnes v. Indep. Auto. Dealers Ass'n of Cal. Health & Welfare Benefit Plan*, 64 F.3d 1389, 1395 n.2 (9th Cir. 1995).

As Defendant correctly notes, the National Institute of Diabetes and Digestive and Kidney Diseases website states that symptoms of low blood sugar "can vary from person to person" and "[s]ometimes people don't feel any symptoms." The University of Michigan Medicine website provides that when a person has "had diabetes for many years, [he] may not always develop symptoms of mild low blood sugar." As the caveats on these websites suggest, the symptoms of low blood sugar are "subject to reasonable dispute," and thus the Court declines to take judicial notice of these symptoms. *See* Fed. R. Evid. 201.

### b. Count I-B: Reasonable Accommodations

Defendant next moves for summary judgment with respect to Plaintiff's reasonable

accommodation claim under the ADA on the grounds that Defendant reasonably accommodated Plaintiff's disabilities. (MSJ at 7.) Plaintiff, however, argues that although Defendant generally provided Plaintiff with reasonable accommodations for his diabetes and back issues, there were times when these accommodations were unavailable. (Resp. at 14.) Plaintiff further contends that a genuine issue of material fact remains as to whether Defendant failed to reasonably accommodate Plaintiff when it ordered him to stop parking in the designated disabled parking space. (Resp. at 15.)

Discrimination under the ADA includes an employer's failure to make a reasonable accommodation. *Dunlap v. Liberty Nat. Prods, Inc.*, 878 F.3d 794, 799 (9th Cir. 2017) (internal quotations and citations omitted); *accord* 42 U.S.C. § 12112(b)(5)(A). A reasonable accommodation may include "job restructuring, part-time or modified work schedules, . . . and other similar accommodations for individuals with disabilities." 42 U.S.C. § 12111(9)(B). Whether an accommodation is reasonable is ordinarily a question of fact, requiring a "fact-specific, individualized analysis of the disabled individual's circumstances and the potential accommodations." *Dunlap*, 878 F.3d at 799. An employer, however, does not have a duty to "provide an employee the accommodation he requests or prefers, the employer need only provide some reasonable accommodation." *Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1089 (9th Cir. 2002).

The Court finds that genuine issues of material fact exist as to whether Defendant reasonably accommodated Plaintiff's diabetes and back disability. Although Plaintiff concedes that Defendant generally provided him with reasonable accommodations for his diabetes and back issues, he argues that Defendant failed to provide those accommodations 100% of the time. (Resp. at 15.) Importantly, Plaintiff contends that on the day of the altercation between him and Mobley, Defendant failed to provide him the reasonable accommodation of the noon lunch time and further asserts that Mobley confronted him about not pulling a part that exceeded his lifting restriction. (Resp. at 15.) Whether Defendant reasonably accommodated Plaintiff within the meaning of the ADA, despite its failure to always honor the noon lunchtime or provide a warehouse staff member to pull

certain parts for Plaintiff, is mired in questions of fact. The Court is therefore unable to conclude as a matter of law that Defendant reasonably accommodated Plaintiff's diabetes and back issues. *See Lane v. Kroger*, 2019 WL 2054360, at *3 (W.D. Wash. May 9, 2019). Accordingly, Defendant is not entitled to summary judgment on these grounds.

The Court also finds a genuine issue of material fact remains as to whether Defendant failed to provide Plaintiff a reasonable accommodation with respect to Plaintiff's lung disability. Despite Plaintiff's possession of a disabled parking placard, Defendant did not allow Plaintiff to park in a designated disabled parking space, and therefore, Plaintiff had to walk an additional three-hundred feet from his car to Defendant's facility. (DSOF ¶¶ 48–49; PSOF Ex. 3 at 35.) Defendant contends that the distance between general employee parking and the designated disabled parking space "is not so great as to constitute a failure to accommodate."[4] (MSJ at 8.) In his deposition, however, Plaintiff explained that he needed to park close in case he needed to access his oxygen tank. (PSOF Ex. 1 at 33.) Plaintiff further alleges that parking in general employee parking required him to "lug" his oxygen tank into the facility. (Resp. at 16.)

Although the facts alleged by Plaintiff are tenuous in showing that parking in the designated disabled spot was necessary for him to perform an essential function of his job, the trier of fact could reasonably find that requiring Plaintiff to walk the extra distance from the general employee parking area constituted a failure to provide a reasonable accommodation. Accordingly, Defendant is not entitled to summary judgment as to whether it reasonably accommodated Plaintiff under the ADA (Count I-B).[5]

---

[4] Defendant further argues Plaintiff's reasonable accommodation claim fails because "he never suffered an adverse employment action in connection with the alleged failures to accommodate." (MSJ at 10.) Defendant, however, convolutes the *prima facie* case Plaintiff is required to establish. *See Dark v. Curry Cty.*, 451 F.3d 1078, 1088 (9th Cir. 2006) ("[The employee] has the burden of showing the existence of a reasonable accommodation that would have enabled him to perform the essential functions of an available job. To avoid summary judgment, however, [the employee] need only show that an accommodation *seems reasonable on its face*.") (citations omitted).

[5] Under Ninth Circuit precedent, employers must engage in an interactive process with a disabled employee once a request for an accommodation has been made. *E.g.*, *Zivkovic*, 302 F.3d at 1089. If a reasonable accommodation would have been possible, "an employer cannot prevail at the summary judgment stage if there is a genuine dispute as to

- 11 -

### c. Count I-C: Hostile Work Environment

With respect to Plaintiff's hostile work environment claim, Defendant argues that Plaintiff failed to exhaust his administrative remedies, a prerequisite to bringing a claim in this Court. (MSJ at 5.) Plaintiff, however, argues that the hostile work environment claim was administratively exhausted because a "hostile work environment is a type of disability discrimination" and "[r]etaliation can include a hostile work environment." (Resp. at 2.) Defendant further argues that even if Plaintiff had exhausted his administrative remedies, he has not established a *prima facie* case of a hostile work environment. (MSJ at 6–7.)

To establish subject matter jurisdiction over his hostile work environment claim, Plaintiff must have exhausted his administrative remedies by filing a timely charge with the EEOC. *B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1099 (9th Cir. 2002). This requirement "giv[es] the charged party notice of the claim and narrow[s] the issues for prompt adjudication and decision." *Id.* (internal quotes omitted). "Subject matter jurisdiction extends to all claims of discrimination that fall within the scope of the EEOC's actual investigation or an EEOC investigation that could reasonably be expected to grow out of a charge." *Vasquez*, 349 F.3d at 644. To determine whether a plaintiff has exhausted claims that are not specified in an administrative charge, the Court considers factors including "the alleged basis of the discrimination, dates of discriminatory acts specified within the charge, perpetrators of discrimination named in the charge, and any locations at which discrimination is alleged to have occurred." *B.K.B.*, 276 F.3d at 1100. The Court construes the allegation in an EEOC charge "with utmost liberality since they are made by those unschooled in the technicalities of formal pleading." *Id.*

The Court finds that Plaintiff did not exhaust his administrative remedies as to his hostile work environment claim. In his EEOC charge, Plaintiff alleged two types of discrimination: disability and retaliation. (DSOF Ex. F at 2.) He indicated that the date of

---

whether the employer engaged in good faith in the interactive process." *Barnett v. U.S. Airways, Inc.*, 228 F.3d 1105, 1116 (9th Cir. 2000) (*en banc*), *vacated on other grounds*, *U.S. Airways, Inc. v. Barnett*, 535 U.S. 391 (2002). Because Plaintiff does not argue that Defendant failed to engage in the interactive process with respect to Plaintiff's diabetes, back problems, or lung problems, that issue is not before the Court.

discrimination was on December 12, 2016 and did not assert that the discrimination was a "continuing action." (DSOF Ex. F at 2.) The charge states that Defendant failed to provide Plaintiff with a reasonable accommodation for his disability and that his employment would not have been terminated if Defendant had provided him with a reasonable accommodation. (DSOF Ex. F at 2–3.) The charge makes no mention of the disparaging comments Plaintiff now alleges or the individuals who made those comments.

Based on Plaintiff's EEOC charge, the EEOC would have no reason to investigate the disparaging comments that Mobley, Hottel, and other employees made to Plaintiff. *See Ong v. Cleland*, 642 F.2d 316, 319 (9th Cir. 1981) ("The charge must at least describe the facts and legal theory with sufficient clarity to notify the agency that employment discrimination is claimed.") Accordingly, the Court lacks jurisdiction to hear Plaintiff's hostile work environment claim.

Even if Plaintiff had exhausted his administrative remedies, Plaintiff has not produced evidence sufficient to establish a *prima facie* case of a hostile work environment. A plaintiff must show: "(1) that he was subjected to verbal or physical conduct of a harassing nature; (2) that this conduct was unwelcome; and (3) that the conduct was sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."[6] *Ariz. ex rel. Horne v. Geo Grp., Inc.*, 816 F.3d 1189, 1206 (9th Cir. 2016). The Court agrees with Defendant that Plaintiff has not established the third element. (MSJ at 6–7.)

Conduct that is sufficiently severe or pervasive to alter the conditions of the victim's employment must be both objectively and subjectively offensive. *Ray v. Henderson*, 217 F.3d 1234, 1245 (9th Cir. 2000). The Court considers all circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening

---

[6] The Ninth Circuit has "[a]ssum[ed] without deciding" that a disability-based hostile work environment claim exists and that such claims would be analyzed under Title VII law. *Garity v. APWU Nat'l Labor Org.*, 655 Fed. Appx. 523, 524 (9th Cir. 2016). Therefore, the Court "assumes here, without so holding, that a cause of action for harassment exists under the ADA" and analyzes the claim under applicable Title VII law. *Roberts v. Dimension Aviation*, 319 F. Supp. 2d 985, 988 (D. Ariz. 2004).

or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Kortan v. Cal. Youth Auth.*, 217 F.3d 1104, 1110 (9th Cir. 2000) (internal quotations omitted). "Not every insult or harassing comment will constitute a hostile work environment." *Ray*, 217 F.3d at 1245. Rather, "[c]onduct must be extreme to amount to a change in the terms and conditions of employment." *Montero v. AGCO Corp.*, 192 F.3d 856, 860 (9th Cir. 1999) (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)). Accordingly, "simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'" *Faragher*, 524 U.S. at 788 (citations omitted).

The Court finds that Plaintiff has not produced evidence sufficient to establish the existence of severe or pervasive conduct that altered the conditions of his employment. Plaintiff contends that two of Defendant's employees made disparaging comments about his disabilities on a weekly basis.[7] Mobley "made fun of [Plaintiff's] diabetes which did not allow him to eat cookies and other foods with processed sugar," and another employee made comments about Plaintiff's "diabetic back." (Resp. at 3; DSOF Ex. 1 at 19.) Plaintiff also contends that Hottel made comments suggesting that Plaintiff was a "gimp" on a monthly basis. (DSOF ¶¶ 36–37.) Although insulting, these occasional comments amount to "simple teasing" that did not alter the conditions of Plaintiff's employment. *See Faragher*, 524 U.S. at 788. Indeed, Plaintiff concedes that these comments only "kind of" impacted his ability to do his job. (DSOF ¶ 38.) Accordingly, even if Plaintiff exhausted his administrative remedies, he has failed to establish an element essential to his hostile work environment claim, and thus Defendant is entitled to summary judgment on Plaintiff's hostile work environment claim (Count I-C).

**B.    Count II: Retaliation**

      **a.    Plaintiff's *Prima Facie* Case**

Defendant moves for summary judgment on Plaintiff's retaliation claim. (MSJ at

---

[7] Plaintiff has not alleged claims based on age discrimination, and thus the Court only considers comments Defendant's employees made to Plaintiff regarding his disabilities.

11.) Plaintiff argues that the texts he sent to Hottel were a request for a reasonable accommodation from Defendant's policy of not tolerating workplace arguments. (Resp. at 17.) Plaintiff further contends that Defendant retaliated against Plaintiff by subjecting him to a hostile work environment. (Resp. at 17.) Defendant, however, argues that the texts are not protected activity, (Reply at 8), and that Plaintiff cannot establish a causal connection between any of his alleged protected activity and his termination. (MSJ at 12.)

Under the ADA, "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter." 42 U.S.C. § 12203(a). To successfully present a *prima facie* case of retaliation, a plaintiff must establish "(1) that he or she engaged in or was engaging in activity protected by the ADA, (2) the employer subjected him or her to an adverse employment decision, and (3) that there was a causal link between the protected activity and the employer's action." *Barnett*, 228 F.3d at 1121. A plaintiff is considered to have engaged in protected activity when, for example, he pursues his rights under the ADA, *Pardi v. Kaiser Found. Hosps.*, 389 F.3d 840, 850 (9th Cir. 2004), or when he informally reports discrimination to a supervisor, *see Passantino v. Johnson & Johnson Consumer Prods., Inc.*, 212 F.3d 493, 506 (9th Cir. 2000).

The Court can infer a causal link "from circumstantial evidence such as the employer's knowledge of the protected activities and the proximity in time between the protected activity and the adverse action." *Dawson v. Entek Intern.*, 630 F.3d 928, 936 (9th Cir. 2011) (finding a causal link between a plaintiff's complaint to human resources and her termination forty-eight hours later). When temporal proximity is the only proffered evidence of retaliation for purposes of a *prima facie* case, "the temporal proximity must be *very close.*" *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (internal quotes omitted) (emphasis added).

The Court first considers whether the texts Plaintiff sent to Hottel following the verbal altercation constitute protected activity. The texts provide:

You and I need to sit down and have a discussion about Travis [Mobley] over

reaching to be a[n] assistant manager[.] . . . I was late like 20 minutes for my lunch not feeling too good because my sugar was low . . . I did lose my temper with Travis due to him and Sam and Lonnie making this a hostile work environment. . . . [T]he work environment has changed[.] I feel like I am working with kids[;] loud music[,] loud talking[,] huddling together watching videos is not productive. . . . I feel like my medical condition had a lot with him making me lose my temper, but we have spoke multiple times about this. Maybe you want me to resign my position when you get back.

(DSOF Ex. 4.)

Defendant correctly notes, however, that Plaintiff did not request an accommodation from Defendant's policy of not tolerating workplace arguments in those text messages. (Reply at 8.) At no point in the texts did Plaintiff give notice to Defendant of his desire for accommodation from the company's policy. *See Barnett*, 228 F.3d at 1114. Rather, Plaintiff merely requested an opportunity to discuss Mobley's "over reaching" as assistant manager. To the extent the texts were a request for reasonable accommodation, the Ninth Circuit has noted that because "a reasonable accommodation is always prospective, an employer is not required to excuse past misconduct even if it is the result of the individual's disability." *Alamillo v. BNSF Railway Co.*, 869 F.3d 916, 922 (9th Cir. 2017) (quoting EEOC, Enforcement Guidance: Reasonable Accommodation and Undue Hardship Under the Americans with Disabilities Act (EEOC ADA Enforcement Guidance), *available at* 2002 WL 31994335, at *25). Accordingly, Plaintiff's texts to Hottel are not protected activity.

Furthermore, although it is undisputed that Plaintiff's prior requests for accommodation are protected activity, those requests occurred in November 2015, thirteen months before Defendant terminated Plaintiff's employment. Plaintiff offers no other evidence to establish a causal link between the requests for reasonable accommodation he made in November 2015 and his termination. The factual setting suggests that the altercation between Plaintiff and Mobley on December 7, 2016—not Plaintiff's request for accommodation in 2015—influenced Defendant's decision to terminate Plaintiff's employment. *See Coszalter v. City of Salem*, 320 F.3d 968, 978 (9th Cir. 2003) ("Whether an adverse employment action is intended to be retaliatory is a question of fact that must

be decided in the light of the timing and the surrounding circumstances."). Thus, the Court concludes no reasonable jury would find a causal link between Plaintiff's November 2015 requests for accommodation and his termination.

Finally, Plaintiff contends Defendant retaliated against him by subjecting him to a hostile work environment. Harassment as retaliation, however, "is actionable only if it is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Ray*, 217 F.3d at 1245. As explained in detail above, Plaintiff failed to produce evidence sufficient to establish a *prima facie* case of hostile work environment. Accordingly, the Court grants Defendant's Motion for Summary Judgment as to Plaintiff's retaliation claim under the ADA (Count II).

### C. Count III: ACRA Claims

With regard to Plaintiff's parallel claims under the ACRA, Arizona courts have held that the ACRA is "generally identical" to the applicable provisions of the ADA, and thus federal case law is persuasive in interpreting the ACRA. *Bodett v. CoxCom, Inc.*, 366 F.3d 736, 742 (9th Cir. 2004). For the same reasons that Defendant is entitled to summary judgment on Plaintiff's hostile work environment claim and retaliation claim under the ADA, Defendant is also entitled to summary judgment on Plaintiff's parallel hostile work environment claim and retaliation claim under the ACRA. For the same reasons Defendant is not entitled to summary judgment on Plaintiff's discriminatory discharge claim and reasonable accommodation claim under the ADA, Defendant is not entitled to summary judgment on Plaintiff's parallel claims under the ACRA.

**IT IS THEREFORE ORDERED** granting Defendant's Motion for Summary Judgment (Doc. 45) as to Plaintiff's hostile work environment claim (Count I-C) and retaliation claim (Count II) under the ADA and Plaintiff's parallel claims under ACRA, and denying the Motion as to Plaintiff's discriminatory discharge claim (Count I-A) and reasonable accommodation claim (Count I-B) under the ADA and Plaintiff's parallel claims under ACRA. This matter will proceed to trial on Plaintiff's remaining claims against Defendant, and the Court will set a Pretrial Conference by separate Order.

**IT IS FURTHER ORDERED** denying Plaintiff's Motion for Judicial Notice (Doc. 54).

Dated this 28th day of October, 2019.

_____
Honorable John J. Tuchi
United States District Judge